The opinion of the Court was delivered by
O’Neall, J.
It appears that Rowland and Henry Rugely were largely indebted to various persons in England, and, to secure the payment of their debts to their creditors, they executed a deed of assignment, conveying all their estate and eifects to certain persons. It is alleged that the assignees, confiding in the industry and integrity of the assignors, authorized them to collect the several debts due to them, and which had been assigned : that Rowland Rugely, under this power, made large collections, with which he purchased thirty acres of land, near *238 •Charleston Gate, in St. Philip’s Parish. It appears by his will, dated in 1776, that he devised one moiety of the residue of his estate, including this land, to his brother, Henry Hugely, and the other moiety to his brothers and sisters, Wm: Hugely, Matthew Rugely, Ann Sjlaughton, Elizabeth Hugely and Frances Rugely., The.said Rowland died in 1777.- ■ .Henry Rugely, in 1790, conveyed the said land to General C.. C. Pinckn,ey and James • Gregorie, in trust, to sell and pay- the debts of Rowland and Henry Rugély. General Pinckney afterwards relinquished his trust, and conveyed all his estate to his co-trustee, James' Gre-gorie, by. whom the land was laid off in lots, and sold" on the 7th February, 1806, to various purchasers, some of whom are the deféndants.. Soon after the sale, it was discovered that perfect titles could not' be, made, and he. therefore declined to receive thé purchase money, or to execute titles. From that •time until 1819, when this bill was filed, attempts were made to perfect the title. . At the filing of the" bill, it was supposed that a perfect title could be made; but it now appears, as to one-twelfth of the whole land, thejegal title is outstanding, and in persons unknown and not parties tó' this suit. Several questions have been made, but it is only necessary to notice two. • • ,
1st. Has the'-Court of Equity jurisdiction of .a cause, at the instance of the vendor, for' the specific performance of a contract for. the sale of land ? ‘ .
2d. If it :has, are the complainants entitled to a specific performance ? . • ' . .
As to the first question, there is no doubt entertained by the Court in this case.. If the complainants-cannot have relief here, it is manifest that they cannot entitle themselves to it any where — for at law they could not'recover, on account of their failure to execute titles whbn. required. More than, twenty years have now' elapsed since the sale. Many of the purchasers'' have since transferred their purchases to others, .between whom- and the complainants there is no privity, of contract. But it' is ■ thought to be important that the--question should',be decided *239 generally, in relation to all cases which may arise between vendor and vendee, and that the case of Bacon vs. Roche, decided at Columbia, December Term, 1829, should be considered, and at once overruled. That case was on a bill filed by the vendor against the vendee, to compel him to accept titles and pay the purchase money. The defendant had agreed to pay $51200, in three annual instalments, for the land, and to take titles from the Commissioner in Equity. The Court regarded this as a mere money demand, and dismissed the bill, on the ground that there was plain and adequate remedy at law. My respect for the opinion of the judges who decided that cause, induced me to suppose that perhaps I had been previously in error, in supposing that the Court of Equity, on contracts for the sale of lands, entertained jurisdiction of a case, at the instance of the vendor, as well as the vendee. But, on reflection, I am perfectly satisfied that the decision in that case is wrong. In coming to this conclusion, it affords some support, that this opinion is now, not only in accordance with the views of this Court, but also with the dissenting opinion of Judge Colcock, and the Chancellor (DeSatjssure) who tried the case of Bacon vs. Roche.
The jurisdiction of the Court of Equity over the specific performance of contracts for the sale of lands, is as ancient as the Court itself. That the party could have remedy at law in damages, is no answer to the claim of jurisdiction. Originally the parties were sent to law to establish their right to damages, before the Court decreed a specific performance. The question, whether the party has a plain and adequate remedy at law, is generally decisive of the Equity jurisdiction. But it is not always so. There are cases of which both law and Equity have jurisdiction, as in cases of partition. It would not then be pretended, that because the party might have proceeded at law, Equity would not give him relief. In cases of specific performance, properly so understood, the Court of law has no jurisdiction. For it has not the power to give relief to both parties, by decreeing titles to one, and the purchase money *240 to the other. It is true, that upon titles being tendered for the whole land sold, and within the time limited by the contract, the vendor may recover his purchase money at law. But this is, at best, a very imperfect jurisdiction. If the titles are not made within the exact time limited by the contract, or if to a small part of the land sold, of even inconsiderable value, the vendor has ho title, and does not therefore tender a conveyance for the whole, there can be no recovery at law. If the vendee should happen to be indebted, and there should be judgments outstanding against him to more than the value .of the land, if the vendor is obliged' to proceed against him at law, the moment his titles are- produced on the trial to prove the tender, the defendant may then'receive them, and the land becomes liable to all the previous liens, to the entire destruction of the plaintiff’s chance of payment of his recovery. If the proceeding is at law, and a recovery is there had, the defendant may. enjoin the plaintiff from proceeding, until he delivers his, title; and until it is reported to be sufficient. At law, the single enquiry, as a condition precedent to the plaintiff’s recovery, is, has he tendered a title according 'to the terms of his contract: if he has, the defendant must show a negative, the plaintiff’s want of a good legal estate to convey, in order to defeat a recovery. In Equity all these difficulties are remedied. ■ If the titles have not been tendered within ■ the exact time limited by the contract, but within a reasonable time, and the defendant has not been thereby prejudiced, the Court will decree the specific performance. So if the land, to which the vendor has no title, could not have constituted any material inducement to the contract, the Court will decree compensation to the vendee, and compel him to take the title. If there should be liens on the vendee’s property which would endanger the vendor’s chance of payment, Equity will give him a specific lien on the property sold, from the contract of sale. In Equity, before the vendee is required to pay, the Court will not-only decree the vendor to execute a title, but also -refer to the Commissioner his title at the instance of the vendee, to ascertain whether he has a good and perfect title, and *241 if he has not, the Court will not enforce the contract against the "vendee. The proceeding by bill for a specific performance of a contract for the sale of the lands is to be encouraged, instead of being discouraged. For, in one case, it ends all litigation between the parties; whereas, if the vendor 'was compelled to sue at law, the vendee might be obliged to resort to Equity for relief, and thus saddle the parties with two suits when one would answer all the purposes. It is conceded, that the vendee may come into Equity to compel the vendor to perform, by executing titles ; and that upon his bill, the Court will decree him to pay, or secure the money, according to his contract, before they decree the execution of titles. If the Court has the power to relieve one of the parties on the same contract, must it not, of necessity, possess the same power as to the other? Contracts for the sale of lands in Equity, are regarded as dependent : the vendor cannot be compelled to part with his land until the vendee pays, or secures to be paid, according to the contract, the purchase money: the vendee cannot be compelled to pay until he receives a good and sufficient title in law. Such a contract cannot constitute, by operation of law, a subject matter for two different jurisdictions, depending upon which of the parties demands its performance. I am aware, that in some cases it is said, where the party can be compensated in damages, the Court of Equity will not decree specific performance. But that applies to cases where both parties would, on the contract, be referred to a Court of law. As in the case of a contract for the sale of a horse ; there, the price may be recovered by the vendor at law, and the vendee, if the horse is refused to be delivered, may recover his value, which will enable him to buy another; and this is regarded as all that is demanded from justice on such a contract. But to this rule, exceptions have been allowed both in England and in this State. Bills for specific performance of a contract for the sale of a chattel, the possession of which was the only object of the vendee, on account of its rarity, antiquity, beauty, or some quality arising more from fancy than value, and where damages would not *242 compensate the vendee for the loss of his purchase, have been sustained, and the contract decreed. In a country where slavery exists, and where that property is of more value than the land which they cultivate, it may be that this exception is yet to receive á wider extension, (a.)
But, I apprehend, the case does not exist, where a vendee, on a contract, can come into the Court of Equity for specific performance, and the vendor cannot.
To sustain the conclusion of the Court, that the case of Bacon vs. Roche must be overruled, many authorities might be cited. A few, however, will be sufficient, -and will be briefly noticed. In 1 Madd. Ch. B61, it is said : “ At whatever time the jurisdiction began, it-isspow very clear, that if a contract has been entered, into by competent parties, and is in the nature and circumstances of it unobjectionable, it is as much of course in a Court of Equity, to decree a specific performance, as it is to give damages at law.” Hall vs. Warren, 9 Ves. 608. In Fleetwood vs. Green, 15 Ves. 594, the bill was filed by the vendor against the vendee, to compel him to pay the purchase money, which was decreed without even a reference of the title, inasmuch as possession had been delivered, and no objection was made to the abstract of title.
In the case of Hepburn vs. Auld, 5 Cra. 262, it was held, that a vendor might compel a specific execution of a contract for the sale of land, if he is able to give a good title at the time of the decree.
These authorities are conclusive of the point decided in Bacon vs. Roche, and are in conformity to a long and well settled practice, with which that case is at war; it must be therefore overruled.
2. It - is true, -as was said by the Lord Chancellor, (Redesdale,) in the case of Davis vs. Hone, 2 Sch. and Lef. 347, “A Court of Equity frequently decrees a specific performance, where the action at law has been lost by the default of the very party seeking specific performance, if it be, notwithstanding, conscien *243 tious that the agreement should be performed.” In Crofton vs. Ormsby, 2 Sch. and Lef. 603, the Lord Chancellor adds the following qualification or rather explanation of the rule stated in Davis vs. Hone : “ So in many other cases of this description, Courts of Equity ought to refuse specific performance, where the delay would be very injurious to the party sought to be charged.” In 1 Madd. 417, it is said that Lord Alvanley held, that a party cannot call upon a party for a specific performance, unless he has shown himself “ready, desirous, prompt and eager.” This, I have no doubt, ought generally to be the rule, but there are many cases which must be exceptions to it, and to them must be applied the rule, as stated by the Lord Chancellor (Redesdale) in the cases of Davis vs. Hone, and Crofton vs. Ormsby. Maddock says, in the same page, “ where a contract has long lain dormant, thirteen years for instance, a specific performance has been refused; and laches of much less continuance is sufficient to dissolve the contract.”
In this case, the delay was from the year 1806, until the year 1818, without an offer to execute titles. During this time, the purchasers were of course deprived of the benefit of their purchases ; the delay tpo was well calculated to injure them in another respect. The property depreciated in value; and this, it is fair-to presume, might have-been anticipated by at least all the purchasers who bought,to resell if titles had been executed. As to such of the purchasers, therefore, who had never taken possession, or had abandoned the possession before that time, the complainants could have no ground whatever for specific performance. But as some of the purchasers had then taken possession, and are still in possession, it is supposed, that the complainants may compel them to comply with their purchases. If the defendants were now insisting on retaining their purchases, I apprehend they might do so, and would be compelled to accept such a title as the complainants could give them, and to pay the purchase money. But as they are willing to abandon their purchases, and are now insisting to do so, it remains to be seen, whether the complainants are, as against the purchasers *244 in actual possession, entitled to a decree for specific performance. If the complainants at the filing of their bill in 1819, or even now, could make a perfect title to the defendants, they might claim, if not an actual specific performance according to the letter, at least a conscientious performance according to such modification as would be equal and just. But it appears that at this time there is an outstanding title to one-twelfth of the whole land, which the complainants cannot convey. This is not a defect in the quantity sold, for which compensation could be decreed. It is a defect in the vendor’s title, whereby the vendees may be ousted and deprived of the land purchased. It has been contended, however, that the equitable title is in the complainants, from the supposed fact, that Rowland Hugely invested the funds of his creditors in the purchase of the land, and that, therefore, a trust resulted in favor of his assignees. This is susceptible of two answers. The fact has not been sufficiently proved, and if it had been, the purchaser is not bound to take an equitable title. The defect of title has been supposed to be cured by the possession of the purchasers for more than five years. I have no doubt, that, where there is an actual ouster of a co-tenant, and a continued adverse possession for more than five years before the Act of 1824, and for ten years since that Act, it will bar a recovery. But I am not satisfied that such a title would be forced on a purchaser. In this case, however, there was not five years possession under the sale before the title was tendered and refused. After that time there was no possession against that title, for it was recognized, and attempted by the complainants to be extinguished. During the great delay from 1806 to this time, the property has depreciated more than one-half in value, and it would be unconscien-tious to not only force the purchasers to comply with the contract, but also to accept a defective title. In the case of Hepburn vs. Auld, 5 Cra. 262, it was held, that the Court of Equity will not compel a specific performance unless the vendor can make a good title to all the land contracted to be sold. Having arrived at the conclusion, that the complainants are not *245 entitled to specific performance, the usual course would be to dismiss the bill, but as this might lead to further difficulty and litigation, and as the bill seeks for restitution of possession, we think that we are at liberty to so decree.
In support of this conclusion, I refer to Costigan vs. Hastler, 2 Sch. and Lef., 168; Orr vs. Hodgson, 4 Wheat. 463 ; the Executors of Bourdeaux vs. Cave, decided at Columbia, May Term, 1829. The Court ought, if possible, to place the parties, as nearly as they can, in the condition in which they were before the contract. Neither should gain or lose by it, more than is inevitable, from the lapse of time and change of circumstances. It is due to the defendant, Bulow, to say that he has offered to do every thing which the Court can decree. Some of the other defendants, and particularly Duggan, objects to any decree of restitution against him. .His grounds of objection are, first, possession for more than five years, before 1824 ; second, that he is a sub-purchaser, and therefore not affected by any of the equities between vendor and vendee. As to the first objection, I concur fully with the Chancellor, that, either at Law or Equity, the statute of limitations could not be pleaded by the vendee against the vendor, while the contract was executory on both parts. If the defendant, Duggan, had purchased without notice of the terms of the first sale, he would have been protected, both by the statute, and as a purchaser for valuable consideration without notice. But he appears to have bought at the sale some of the lots in his possession; and as to the others, he is charged in the bill, which is against him taken pro confesso, to have bought them from the first purchasers, upon an agree- ’ ment to comply with the terms of sale. He is, therefore, in the same condition, as to all the lots, as if he had bought at the sale in 1806. His objections are untenable, and must be overruled. .
It is ordered and decreed, that so. much of Chancellor De-Saussuhe’s decree as conflicts with this opinion be reversed ; that so much of the bill as seeks a specific performance of the contract of sale be dismissed ; that defendants do restore pos *246 session of the lots, by them respectively purchased, to the complainants ; that such of the defendants as have had actual possession of lots, so improved as to be capable of yielding rents and profits, do respectively account for the rents and profits, without interest on the annual rents and profits ; in such account, the defendants must be allowed for the present value of any permanent and valuable improvements made on their respective lots, and if the present value of the improvements made by any one of the defendants, should exceed the amount of rents reported against him, it is declared the lots so improved shall be liable to the payment of any such balance. The costs to be paid as directed by the Chancellor.
Johnson and Harper, JJ., concurred.

Decree modified.

 Vide Young vs. Burton, MeM. Eq. 255.